IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| George Patterson<br>Plaintiff, | Civil Action |
| v. | No. 10-cv-996 |
| Bernard Averbeke d/b/a<br>Freedom Used Cars<br>Defendant. | The Honorable Lawrence Stengel<br>Jury Trial Demanded |

**FIRST AMENDED COMPLAINT**

George Patterson, Plaintiff, is an African American male residing in Lancaster, Pennsylvania. He is a free citizen seeking the benefits of the same; he brings this action pursuant to 42 U.S.C. §1981 of the Civil Rights Act of 1866. Plaintiff Patterson also brings a claim arising under the Pennsylvania Human Relations Act (the "PHRA")[1] for discrimination based on race and access to public accommodation, services and to enter into contract for products and services.

## I. INTRODUCTION

George Patterson is a dark-skinned African American man who enjoys cars. He wanted to purchase a high quality luxury car for his future wife. After searching through newspapers and auto advertisements, he found a make and model car that he thought would make the perfect gift for her. He called the dealer and made an arrangement to go to the car dealership with his future father-in-law. Upon arriving, Bernard Averbeke refused to let George Patterson test drive the car, get in the car, or buy the car. The car was parked in the front display area of the

---

[1] 43 P.S. § 951 *et seq.*

dealership. Mr. Averbeke claimed it was sold to a friend of his who was coming to pay for the car that evening. Mr. Averbeke treated Mr. Patterson rudely even after Mr. Patterson offered to buy the car right then and there. Mr. Patterson became suspicious that Mr. Averbeke treated Mr. Patterson in a racially discriminatory manner. Mr. Patterson returned to his car and called his friend, James Bachman, who is white. He asked Mr. Bachman to call the dealership and ask about the car's availability. Twenty-two minutes later Mr. Bachman called Mr. Averbeke and asked about the car. Mr. Averbeke told Mr. Bachman the car was available for sale and made an appointment for him to look at the car the next day. The car was not sold or on hold for anyone. Mr. Averbeke refused to sell Mr. Patterson the BMW because Mr. Patterson is an African American.

## II. JURISDICTION

1. The jurisdiction of this Court over Count I of this controversy is based upon federal question jurisdiction pursuant to 28 U.S.C. § 1331 in that this district court has original jurisdiction of all civil actions arising under the laws of the United States. The federal law to be enforced in Count I is 42 U.S.C. §1981, the Civil Rights Act of 1866 and 1991.

2. The jurisdiction of this Court over Count II of this controversy is based upon supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a). Plaintiff's claim under Count II is to be enforced under the PHRA, 43 Pa. C.S.A. §951 *et seq.* The laws of the Commonwealth of Pennsylvania apply to Count II.

## III. VENUE

3. Venue is appropriate in this district pursuant to §28 U.S.C. § 1391(b) in that Defendant resides in this judicial district and a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## IV. PARTIES

4. Plaintiff, George Patterson herein known as "Plaintiff Patterson" or "Plaintiff."

5. Defendant, Bernard Averbeke d/b/a Freedom Used Cars herein known as "Defendant Averbeke" or "Defendant."

## V. EXHAUSTION OF ADMINISTRATIVE REMEDIES FOR THE PHRA CLAIM

6. Plaintiff Patterson exhausted applicable administrative remedies.

7. Plaintiff Patterson filed a Complaint with the Pennsylvania Human Relations Commission in a timely manner, Case No. 200804132.

8. The Pennsylvania Human Relations Commission issued a right to sue letter on February 19, 2010.

## VI. FACTUAL ALLEGATIONS

9. Plaintiff Patterson is a young African American male.

10. On January 22, 2009, Plaintiff Patterson was searching through newspaper flyers and advertisements for a high quality luxury car.

11. Plaintiff Patterson read the January 21-February 3, 2009 *Auto Exchange*, which is published every other week in Lancaster, Lebanon, Dauphin, Cumberland, Chester & York Counties.

12. On page 39 of the *Auto Exchange*, Plaintiff noticed a 2002 BMW 745Ii advertised for $16,950.

13. Plaintiff Patterson was at the home of his then future father-in-law, Benjamin Burgos, who resides in Lancaster, Pennsylvania.

14. Plaintiff Patterson used Mr. Burgos' home telephone to call the Freedom Used Car dealership located in East Petersburg, Pennsylvania.

15. Freedom Used Cars is owned and operated by Defendant Averbeke.

16. There were two phone numbers listed on the advertisement, a business number, (717-581-0575) and a cell phone number (717-203-7523).

17. Plaintiff Patterson called the Defendant Averbeke and asked about the availability of a 2002 745 BMW advertised in the *Auto Exchange*.

18. The Defendant Averbeke informed Plaintiff Patterson that the car was available for sale.

19. Plaintiff Patterson asked his then future father-in-law, Benjamin Burgos, to accompany him to Defendant Averbeke's place of business.

20. Plaintiff Patterson and Mr. Burgos left shortly after hanging up with Defendant Averbeke.

21. Both Plaintiff Patterson and Mr. Burgos drove to Defendant Averbeke's place of business, 5309 Main Street, East Petersburg, Pennsylvania. The drive took approximately ten minutes.

22. When Plaintiff Patterson and Mr. Burgos arrived at Defendant Averbeke's place of business, they exited their car and walked to the dealership to look at the BMW advertised in the *Auto Exchange*.

23. The men waited for several minutes until someone walked out to greet them.

24. The car was positioned in the front of the lot where other cars that were for sale were on display.

25. Defendant Averbeke walked towards them and looked at Plaintiff Patterson in a rude and unprofessional manner.

26. Defendant Averbeke never greeted the Plaintiff or Mr. Burgos.

27. Defendant Averbeke never extended his hand to shake Plaintiff Patterson's hand.

28. Defendant Averbeke continued to talk on his cell phone while outside with the men.

29. Defendant Averbeke never offered to show the Plaintiff any other cars.

30. Defendant Averbeke never took Plaintiff Patterson's contact information.

31. Plaintiff Patterson asked Defendant Averbeke if they could take the car for a test run.

32. Defendant Averbeke refused Plaintiff Patterson an opportunity to test drive the car.

33. Defendant Averbeke said he already sold the car.

34. Plaintiff Patterson responded that he had just called less than twenty minutes ago and the car was still for sale at that time.

35. Defendant Averbeke said that a friend of his bought the car and he was coming to get the car now.

36. Plaintiff Patterson informed Defendant Averbeke that he was prepared to purchase the car and he had a check with him.

37. Plaintiff Patterson reminded Defendant Averbeke that he had just called and asked about if the car was available.

38. Defendant Averbeke said he knew the people who were coming to get the car and they had the money to buy the car.

39. Defendant Averbeke turned and walked away from Plaintiff Patterson and Mr. Burgos.

40. Mr. Burgos saw how Defendant Averbeke treated Plaintiff Patterson and he said something to the effect that Defendant Averbeke was acting like a racist.

41. Defendant Averbeke did not respond.

42. Plaintiff Patterson and Mr. Burgos left the business.

43. Plaintiff Patterson was upset by the incident and he did not believe Defendant Averbeke's statement that the car was sold and that he had friends coming to buy the car.

44. Plaintiff Patterson called his friend, Jim Bachman, and told him about the incident at 6:14 p.m. on January 22, 2009.

45. Plaintiff Patterson asked Mr. Bachman to call the dealer and ask about the car's availability.

46. Mr. Bachman is a white male.

47. At 6:42 p.m. on January 22, 2009, Mr. Bachman called the car lot using the (717) 203-7523 phone number located on the car lot advertisement.

48. Defendant Averbeke answered the phone.

49. Mr. Bachman asked if the car was still available.

50. Defendant Averbeke told Mr. Bachman that the car was still available and for sale.

51. Defendant Averbeke invited Mr. Bachman to look at the car that evening.

52. Mr. Bachman told Defendant Averbeke he could not come to the car lot that evening.

53. Mr. Bachman agreed to look at the car the next day.

54. During the conversation that Mr. Bachman had with Defendant Averbeke, Defendant Averbeke never mentioned that the car was on hold or that the car was sold.

55. The telephone conversation between Mr. Bachman and Defendant Averbeke lasted nine minutes.

56. After Mr. Bachman spoke with Defendant Averbeke, Mr. Bachman called Plaintiff Patterson and told him that the car was not sold.

57. Mr. Bachman and Plaintiff Patterson agreed to travel to Freedom Used Cars the next day and see how Defendant Averbeke treated Mr. Bachman.

58. On January 23, 2009, Mr. Bachman traveled with Plaintiff Patterson to Defendant Averbeke's place of business in East Petersburg, Pennsylvania.

59. Plaintiff Patterson stayed in the car while Mr. Bachman walked over to look at the same car Plaintiff Patterson had asked about the night before, the 2002 745 BMW.

60. Mr. Bachman approached the car, which was located in the same display area where Plaintiff Patterson saw the car the night before.

61. Defendant Averbeke approached Mr. Bachman and they spoke about the car.

62. Defendant Averbeke extended his hand to shake Mr. Bachman's hand.

63. Mr. Bachman asked Defendant Averbeke again if the car was for sale and available.

64. Defendant Averbeke indicated the car was for sale and available for purchase.

65. Defendant Averbeke opened the car up and allowed Mr. Bachman to inspect the car.

66. Defendant Averbeke offered Mr. Bachman the opportunity to take the car on a test drive.

67. Defendant Averbeke never told Mr. Bachman that someone else wanted the car or that someone was coming to pay for the car.

68. Mr. Bachman told Defendant Averbeke he was interested in the car, but he would have to get back to him.

69. Defendant Averbeke did not treat Mr. Bachman in a rude manner.

70. On information and belief, Defendant Averbeke intentionally engaged in a pattern and practice of discriminating against the Plaintiff because he is an African American man.

71. In the summer of 2007, Plaintiff Patterson called Defendant Averbeke and asked about the cost of a jeep that was advertised in the *Auto Exchange*.

72. Over the phone, Defendant Averbeke informed Plaintiff Patterson that the jeep was for sale for $8,000.

73. When Plaintiff Patterson arrived at the dealership, and tried to purchase the jeep, Defendant Averbeke told Plaintiff Patterson that the price for the jeep was $12,000.

74. Plaintiff Patterson objected and told Defendant Averbeke that the price over the phone was $8,000.

75. Defendant Averbeke refused to sell the car to Plaintiff for the price previously quoted.

76. On September 5, 2008, Defendant Averbeke sold that same Jeep for $7,950 to Michael and Kimberly Rupp.

77. Upon information and belief, Defendant Averbeke is engaging is discriminatory practices against Plaintiff Patterson which are proscribed by the Pennsylvania Human Relations Act.

78. Plaintiff Patterson searched for similar cars on the Internet and discovered that other similar BMW models cost two to four thousand dollars more than Defendant Averbeke's asking price.

## VII. FEDERAL CIVIL RIGHTS STATUTE SUPPORTING PLAINTIFF'S FIRST CAUSE OF ACTION

§ 1981. Equal rights under the law

(a) Statement of equal rights. All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

(b) "Make and enforce contracts" defined. For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

## VIII. FIRST CAUSE OF ACTION – VIOLATION OF THE CIVIL RIGHTS ACT OF 1866

79. Plaintiff Patterson incorporates by reference the above paragraphs.

80. Plaintiff Patterson is a member of a racial minority.

81. Plaintiff Patterson was prepared to purchase a car that was listed for sale by Defendant Averbeke.

82. Upon seeing that Plaintiff Patterson was an African American man, Defendant Averbeke refused to sell a car on his lot to Plaintiff Patterson.

83. Defendant Averbeke prevented Plaintiff Patterson from shopping on his lot by intentionally discriminated against Plaintiff Patterson on the basis of his race.

84. Purchasing goods is a protected activity under 42 U.S.C. § 1981.

## IX. PENNSYLVANIA STATUTE SUPPORTING PLAINTIFF'S SECOND CAUSE OF ACTION

43 P.S. § 955. Unlawful Discriminatory Practices

It shall be an unlawful discriminatory practice, unless based upon a bona fide occupational qualification, or in the case of a fraternal corporation or association, unless based upon membership in such association or corporation, or except where based upon applicable security regulations established by the United States or the Commonwealth of Pennsylvania:

(i) For any person being the owner, lessee, proprietor, manager, superintendent, agent or employe of any public accommodation, resort or amusement to:

(1) Refuse, withhold from, or deny to any person because of his race, color, sex, religious creed, ancestry, national origin ... either directly or indirectly, any of the accommodations, advantages, facilities or privileges of such public accommodation, resort or amusement.

## X. SECOND CAUSE OF ACTION – PENDANT STATE CLAIM - VIOLATION OF THE PENNSYLVANIA HUMAN RELATIONS ACT

85. Plaintiff Patterson incorporates by reference the above paragraphs.

86. Plaintiff Patterson is a member of a racial minority.

87. Defendant Averbeke refused to sell a car on the display area of his lot to Plaintiff Patterson.

88. Defendant Averbeke discriminated against Plaintiff Patterson on the basis of his race.

89. Refusing to sell property because of the person's race is an unlawful discriminatory practice under the Pennsylvania Human Relations Act.

## XI. PLAINTIFF'S PRAYER FOR RELIEF

Wherefore, Plaintiff Patterson prays that this Court grant him the following relief:

a. Enter a declaratory judgment finding that the foregoing actions of the Defendant violate 42 U.S.C. § 1981;

b. An order enjoining Defendant Averbeke from engaging in discriminatory practices;

c. Make Plaintiff Patterson whole, including but not limited to granting the benefit of the bargain sought;

d. Payment of Plaintiff Patterson's reasonable out of pocket expenses caused by the discriminatory practice;

e. Payment of Plaintiff Patterson's actual damages, including damages caused by humiliation and embarrassment;

f. Payment of Plaintiff Patterson's reasonable costs and attorney fees for prosecuting this complaint.

g. Grant a trial by jury on all appropriate matters;

h. Inform the appropriate Commonwealth licensing authority of Defendant Averbeke's discriminatory practices to take appropriate action against the Defendant as a licensee;

i. To provide such further relief as the Court deems necessary and appropriate.

Respectfully submitted,
TRIQUETRA LAW ®

Dated: December 29, 2010

Sharon R. López
Attorney for Plaintiff George Patterson
35 East Orange Street, Suite 301
Lancaster, PA 17602
(717) 299-6300 (Telephone)
(717) 299-6300 (Fax)
Lopez@TriquetraLaw.com
PA ID 70605