IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GEORGE PATTERSON, | : | CIVIL ACTION |
| Plaintiff | : | |
| | : | |
| vs. | : | NO. 10-996 |
| | : | |
| BERNARD AVERBEKE | : | |
| d/b/a Freedom Used Cars, | : | |
| Defendant | : | |

M E M O R A N D U M

STENGEL, J.                                                                          September  6, 2011

George Patterson brings this action against Bernard Averbeke, the owner of a used car dealership known as Freedom Used Cars in East Petersburg, Pennsylvania.  The amended complaint alleges violations of 42 U.S.C. § 1981 of the Civil Rights Act of 1866, and the Pennsylvania Human Relations Act.  The parties have filed cross-motions for summary judgment.  Mr. Patterson also filed a motion to strike several documents which Defendant Averbeke attached to his response to the plaintiff's motion for summary judgment.  For the following reasons, I will deny the motions, reserving the right to re-visit the motion to strike at trial.

I.  BACKGROUND

On January 22, 2009, Plaintiff George Patterson, an African American, was searching through flyers and advertisements for a luxury car while at the home of his fiancée's father, Ben Burgos.  He planned to purchase a car for his fiancée as an early wedding present.  Mr. Patterson found a 2002 BMW for sale in one of the periodicals at a price of $16,950.  The car was located at Defendant Freedom Used Cars, owned and

operated by Defendant Bernard Averbeke.  Mr. Patterson called the phone number associated with the ad, and confirmed with Mr. Averbeke that the car was still available.[1] After Mr. Burgos took a bath and ate dinner, he and the plaintiff drove to the dealership to purchase the BMW.  Upon arrival, they walked over to the BMW, and waited several minutes for the defendant to approach them.  Mr. Averbeke came out, greeted the gentlemen, but continued to engage in a separate conversation on his cell phone.  Mr. Patterson asked the defendant if he could test drive the car,[2] and the defendant responded that he could not.  Mr. Averbeke told Mr. Patterson "you can't buy the car," because the car had been "on hold"[3] for days.  Mr. Patterson insisted that he wanted to buy the car, and that he could "pay right now."  Mr. Averbeke did not offer to sell any of the other cars on the lot to the plaintiff.  Mr. Burgos said to Mr. Patterson, "Let's go, he's a racist."  The two men turned and walked away.

At some point shortly after this encounter, the plaintiff called his friend James Bachman, a Caucasian.  Mr. Bachman's telephone records show that he received that call at 6:14 p.m., on January 22, 2009.  The plaintiff told Mr. Bachman that he had spoken by

---

[1] At his deposition, Mr. Averbeke stated he did not remember receiving a telephone call in January 2009 from the plaintiff regarding the car.

[2] It is interesting to note that Mr. Patterson's driver's license had been suspended for a while at the time of this encounter.  Thus, he probably would not have been legally able to test drive the vehicle.

[3] At his deposition, Mr. Patterson insisted that, when he arrived at the lot, Mr. Averbeke told him the car was "sold" and not "on hold."  The defendant and Mr. Sandillon have both testified, however, that the car was "on hold" for Mr. Sandillon.  The defendant further testified that he told the plaintiff while he was at the lot that the car was "on hold."  Finally, Mr. Bachman, the plaintiff's comparator, testified that the plaintiff told him on January 22, 2009, that the car was "on hold."  More than semantics, this discrepancy is important because Mr. Averbeke's proffered legitimate, non-discriminatory reason for not selling the car to the plaintiff is because the car was "on hold," and the hold was subsequently released.  This genuine dispute of a material fact further renders summary judgment inappropriate.

telephone with a salesman at Freedom Used Cars who told the plaintiff that a BMW was available, yet when he arrived at the dealership, that same salesperson said that the car was no longer for sale.  Because he suspected racism after Mr. Burgos' comment, the plaintiff asked Mr. Bachman to call the dealership to ask the defendant if the car was still available.  Mr. Patterson was interested to know whether the salesman would treat Mr. Bachman differently.[4]  Telephone records show that Mr. Bachman complied and made the call to the defendant at 6:43 p.m., on January 22, 2009, twenty-nine minutes after the plaintiff's call to Mr. Bachman.  Mr. Averbeke informed Mr. Bachman that the car was still available for sale, and that it was in good condition.  In fact, Mr. Averbeke told Mr. Bachman that the interior of the car looked like it had just come off the showroom floor.  Mr. Bachman testified that he was not sure whether Mr. Averbeke had told him the car had 104,000 or 140,000 miles.  After asking for directions to the dealership, Mr. Bachman told the defendant that he would not be able to look at the car that night but would come and look at the car the next day.  The telephone conversation lasted nine minutes.

On the following day, Mr. Bachman drove to the defendant's dealership with his children and the plaintiff, and parked on a lot next to the dealership.  Mr. Patterson stayed in the vehicle while Mr. Bachman walked over to look at the BMW.  Mr. Averbeke approached Mr. Bachman and they spoke about the car.  Mr. Bachman asked if the car

---

[4]  The amended complaint alleges that Mr. Patterson was treated rudely and not greeted by Mr. Averbeke, and that Mr. Averbeke was on the cell phone for the duration of the encounter.  He characterizes this behavior as rude and unprofessional.  At his deposition, however, Mr. Patterson testified that Mr. Averbeke came out and greeted them, stating "May I help you?"

was still available for sale, and Mr. Averbeke responded that it was.  Mr. Averbeke turned on the car, popped the hood, and showed Mr. Bachman the car's motor.  He also offered Mr. Bachman to take the car for a test drive.

Mr. Averbeke testified that at some point between the time of the plaintiff's visit and the time of Mr. Bachman's telephone call, he had spoken with Jan Luc Sandillon, the friend and repeat customer for whom he was holding the car.  Mr. Sandillon told Mr. Averbeke that his wife was concerned about the excessive mileage of the vehicle, and that he was no longer interested in purchasing the car.  Thus, after Mr. Bachman withdrew his interest, the car again became available for sale.

## II.  STANDARD OF REVIEW

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  A factual dispute is "material" only if it might affect the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  For an issue to be "genuine," a reasonable fact-finder must be able to return a verdict in favor of the non-moving party.  Id.

A party seeking summary judgment initially bears responsibility for informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The party opposing summary judgment "cannot rest on mere pleadings or allegations; rather it must point to actual evidence in the record on which a jury could decide an issue of fact its way."  El v. SEPTA, 479 F.3d 232, 238 (3d

Cir. 2007). A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing relevant portions of the record, including depositions, documents, affidavits, or declarations, or showing that the materials cited do not establish the absence or presence of a genuine dispute, or showing that an adverse party cannot produce admissible evidence to support the fact. FED. R. CIV. P. 56(c). Summary judgment is therefore appropriate when the non-moving party fails to rebut the moving party's argument that there is no genuine issue of fact by pointing to evidence that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322; Harter v. GAF Corp., 967 F.2d 846, 852 (3d Cir. 1992).

## III. DISCUSSION

Title 42 of the United States Code, Section 1981, prohibits racial discrimination in, *inter alia*, the making and enforcement of contracts and property transactions:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses and exactions of every kind, and to no other.

42 U.S.C. § 1981(a).

In order to establish a violation of 42 U.S.C. § 1981,[5] a plaintiff must prove intentional discrimination. Chauhan v. M. Alfieri Co., Inc., 897 F.2d 123, 126 (3d Cir. 1989) (citing General Building Contractors Association v. Pennsylvania, 458 U.S. 375, 389 (1982); Croker v. Boeing Co., 662 F.2d 975, 988 (3d Cir. 1981). In a Section 1981 consumer discrimination case, such as this, a plaintiff must prove that: (1) he is a member of a protected class; (2) he sought to make or enforce a contract for services ordinarily provided by the defendant; and (3) he was denied the right to enjoy the benefits or privileges of the contractual relationship under factual circumstances that rationally support an inference of unlawful discrimination, in that (a) the plaintiff was deprived of services that similarly situated persons outside the protected class were not, or (b) the plaintiff received services in a markedly hostile manner and in a manner which a reasonable person would find objectively unreasonable. Anderson v. Wachovia Mortg. Corp., 621 F.3d 261, 274 (3d Cir. 2010) ("Thus, § 1981 is violated not only when a lender discriminatorily rejects applicants, but also when the lender engages in other conduct that amounts to discrimination with respect to the 'terms' and 'conditions' of the borrower's contractual relationship with the lender"); see also Brown v. Philip Morris, Inc., 250 F.3d 789, 797 (3d Cir. 2001) (a plaintiff alleging a claim pursuant to § 1981 must plead sufficient facts in support of the following elements: (1) the plaintiff is a

---

[5] Here, the amended complaint includes a state law claim pursuant to the PHRA. The substantive elements of proof, as well as the standards to decide a motion for summary judgment, are the same for both the § 1981 claim and for the claim based on the PHRA. Sherrod v Philadelphia Gas Works, 209 F. Supp.2d 443 (E.D. Pa., 2002) (applied elements of proof and McDonnell-Douglas analysis of § 1981 claims to PHRA claims); Jones v. School Dist. of Philadelphia, 198 F.3d 403, 409 (3d Cir. 1999) (motion for summary judgment standards are the same for the federal and the Pennsylvania claims). Accordingly, because the analysis is the same, I will not discuss these claims separately.

member of a racial minority; (2) intent to discriminate on the basis of race by the defendant; and (3) discrimination concerning one or more of the activities enumerated in the statute, which includes the right to make and enforce contracts).  In a business setting, the financial interests of the business promote norms that encourage the sale of goods and services.  Id.

A plaintiff may prove discriminatory intent with both direct evidence and the McDonnell Douglas burden-shifting framework.  Anderson v. Wachovia Mortg. Corp., 621 F.3d at 268 ("We thus hold that the direct evidence and McDonnell Douglas tests should be applied to lending discrimination claims brought under § 1981").  Direct evidence of discriminatory animus includes using racial epithets while engaging in the transaction or situation giving rise to the adverse treatment.  See Merritt v. Dillard Paper Co., 120 F.3d 1181, 1189-90 (11th Cir. 1997); Green v. Dillard's, Inc., 483 F.3d 533, 540 (8th Cir. 2007).  Furthermore, where direct evidence of discrimination reveals discriminatory animus, it is unnecessary to rely on the McDonnell Douglas burden-shifting framework.  Walden v. Georgia-Pacific Corp., 126 F.3d 506, 512 (3d Cir. 1997).  Once a plaintiff produces direct evidence of discriminatory animus, the defendant has the burden of showing he would have made the same decision in the absence of discriminatory animus.  Id.

Here, there is no direct evidence of discriminatory animus such as express statements made by the defendant.  Therefore, the plaintiff's proof follows the McDonnell Douglas paradigm for proof by circumstantial evidence.  McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  Pursuant to this framework, Mr. Patterson bears

the "ultimate burden" of showing that the defendant intentionally discriminated against him. Texas Dep't of Comm. Affairs v. Burdine, 450 U.S. 248, 253 (1981). To meet this burden, he must first set forth a *prima facie* case of discrimination as described above. McDonnell Douglas, 411 U.S. at 802; Burdine, 450 U.S. at 253–254. While the *prima facie* case only "raises an inference of discrimination," the Supreme Court of the United States has stated that, once the *prima facie* case is established, it will presume that the defendant's action is "more likely than not based on the consideration of impermissible factors." Id. at 254. Should the plaintiff establish his *prima facie* case, the burden of production, but not the burden of persuasion, shifts to the defendant to articulate some legitimate and nondiscriminatory reason for his action. Sarullo v. U.S. Postal Serv., 352 F.3d 789, 797 (3d Cir. 2003). It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether he discriminated against the plaintiff. Burdine, 450 U.S. at 254. If the defendant meets this burden, the presumption of a discriminatory action raised by the *prima facie* case is rebutted. Id. The plaintiff must then demonstrate by a preponderance of the evidence that the defendant's articulated reason was merely a pretext for discrimination, and not the actual motivation behind his conduct. Id.

For purposes of this motion, I will assume that the plaintiff has satisfied his burden of proving a *prima facie* case. Thus, I will examine Mr. Averbeke's proffered legitimate, non-discriminatory, exculpatory reason for his alleged conduct on January 22, 2009. McDonnell Douglas, 411 U.S. at 802. Mr. Averbeke insists that he had no discriminatory animus when he refused to sell the BMW to Mr. Patterson. Instead, he explains that the car was "on hold" for Mr. Sandillon, his friend and repeat customer. Mr. Sandillon

supports this explanation through deposition testimony. He testified that shortly after he returned from France on January 21, 2009, he stopped by Mr. Averbeke's lot and showed interest in the BMW. Mr. Sandillon asked Mr. Averbeke to hold the vehicle until Mr. Sandillon had the opportunity to discuss the potential purchase with his wife. Mr. Sandillon could not remember exactly the date or time of day when he spoke with Mr. Averbeke or whether the communication was by telephone or in person. He presumes that it was either the day he returned from France or the following day. Mr. Sandillon further testified that it was his habit to drop by the defendant's car lot several times a week to catch up with his friend, Mr. Averbeke. This proffered reason and supporting evidence is sufficient to rebut Mr. Patterson's inference of discrimination. Thus, the burden shifts back to Mr. Patterson to show, by a preponderance of the evidence, that this reason is pretextual.

To discredit the defendant's articulated reason, the plaintiff need not produce evidence that necessarily leads to the conclusion that the defendant acted for discriminatory reasons, Sempier v. Johnson & Higgins, 45 F.3d 724, 732 (3d Cir. 1995), or produce additional evidence beyond his *prima facie* case, Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994). Instead, he must "point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the [defendant's] articulated legitimate reason; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the [defendant's] action." Simpson v. Kay Jewelers, 142 F.3d 639, 644 (3d Cir. 1998) (quoting Fuentes, 32 F.3d at 764).

9

In attempting to satisfy his burden, Mr. Patterson insists that the defendant's proffered reason is pretext, and that there is no evidence of record that any reasonable person could use to draw an inference that the car was actually "on hold," and subsequently released by Mr. Sandillon during the relevant time period.  First, the plaintiff points to the fact that Mr. Sandillon had been in France until January 21, 2009, which would make it unlikely that the car had been "on hold" for days.  Second, telephone records show that no telephone calls had been placed between the defendant and Mr. Sandillon on either January 21 or 22, 2009.  Thus, the plaintiff insists, the only asserted non-discriminatory reason proffered by the defendant is without foundation and thus pretextual.

Both Mr. Averbeke and Mr. Sandillon, however, have testified that they do not remember specifically how or exactly when Mr. Sandillon released his hold on the car. While the plaintiff has proven that no telephone communication existed between the two friends on the days in question, the possibility of other types of communication certainly exists.  Mr. Averbeke and Mr. Sandillon testified that the two friends often see each other during any given week.  Mr. Sandillon stops by the car lot several times to chat with Mr. Averbeke.  They socialize together with their families.  Mr. Sandillon also testified that Mr. Averbeke knows Mr. Sandillon's taste in cars and will occasionally mention to Mr. Sandillon when a car is available that might be of Mr. Sandillon's liking.  It is quite possible then that the two friends communicated in person when Mr. Sandillon withdrew his interest in the BMW.  That possibility has not been refuted by the plaintiff, and has created a genuine issue of material fact rendering summary judgment inappropriate.

Whether the car was "on hold" on January 22, 2009, and subsequently released during the short period of time between Mr. Patterson's visit to Mr. Averbeke's lot and Mr. Bachman's telephone call to Mr. Averbeke is a credibility determination for the jury. Thus, the plaintiff has failed to prove, by a preponderance of evidence, that the defendant's proffered reason for not selling the car to the plaintiff is false or that the real motivation for the defendant's conduct was racial discrimination. I cannot find as a matter of law that Mr. Patterson has proved pretext or that Mr. Averbeke has proved the absence of pretext. Accordingly, summary judgment cannot be granted to either party, and I will deny both motions.

Finally, Mr. Patterson filed a motion to strike several documents attached to Mr. Averbeke's response to the plaintiff's motion for summary judgment. Documents #69 through #83, collectively known as Appendix E, purportedly reflect the defendant's sales to other non-Caucasian individuals during the period between October 11, 2008 and December 9, 2009. Mr. Patterson insists that these documents are inadmissible for a variety of reasons. I do not agree, and will deny the motion to strike at this stage of these proceedings.

The defendant describes this material as derived "from a greater compilation of regularly kept business records," and shows "the numerous dark skinned persons to whom [he] had sold vehicles in late 2008 to late 2009." The documents are comprised of a copy of the buyer's driver's license, a copy of the vehicle's title, and a copy of the sales information envelope for each such sale made.

Initially, I note that the defendant's business name is contained on every set of documents for the sales identified during that period. The sales records also correspond to the computer printout of sales during the period. Further, the evidence was produced during discovery. I find that these records satisfy Rule 901(a) of the Federal Rules of Evidence which requires "authentication or identification as a condition precedent to admissibility."

Next, I do not agree with the plaintiff that these documents are improper character evidence under Rule 404 of the Federal Rules of Evidence.[6] They are, instead, habit evidence permitted under Rule 406 of the Federal Rules of Evidence. Rule 406 provides:

> Evidence of the habit of a person or of the routine practice of an organization, whether corroborated or not and regardless of the presence of eyewitnesses, is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice.

In order to make a profit or at least to break even, the defendant must sell the vehicles on his lot within ninety days of their acquisition, or purchase the vehicles himself. The defendant buys the vehicles at auction on a floor plan, financing the purchases he makes for three months. After three months, if he has not sold the vehicle, he must pay for it himself, which provides an economic impetus to sell a vehicle in three months to whomever can pay such that the defendant can make a profit or at least avoid a loss. He argues that it is his habit, therefore, to sell to whomever can pay regardless of skin color.

---

[6] Rule 404 provides that character evidence, or evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion, with three exceptions which pertain only in criminal cases.

12

As soon as the defendant makes a sale, he creates a record of the sale by copying the buyer's driver's license, the vehicle's title, and the "used car record envelope" which provided other details of the transaction, such as price. The pattern of creating this record does not vary, and is reflexive or semi-automatic. These records corroborate his habit to sell to whomever will pay, and thus are evidence of his habit admissible under Federal Rule of Evidence 406.

 I also do not agree that Appendix E is inadmissible hearsay with no exception to the hearsay rule. Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." FED. R. EVID. 801(c). Certainly the documents show that Mr. Averbeke has sold vehicles to non-Caucasians, and, as such, are hearsay. Appendix E, however, satisfies an exception to the hearsay rule, i.e., as a record of regularly conducted activity. Rule 803(6) provides:

> A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record or data compilation, all as shown by the testimony of the custodian or other qualified witness, or by certification that complies with Rule 902(11), Rule 902(12), or a statute permitting certification, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

Mr. Averbeke testified that he keeps a copy of the buyer's driver's license when he makes a sale, along with a copy of the vehicle's title. The copies of the licenses correspond to the titles of the vehicles and the defendant's own notes. Thus, the records were made at the time of sale by the owner of the business and are kept in the course of his regularly conducted business activity. They are, therefore, admissible under our Rules of Evidence.

Next, the plaintiff argues that these records are irrelevant because sales to other customers of other cars on other dates would not assist the factfinder in determining whether the BMW in question was "on hold" on January 22, 2009. Instead, the plaintiff seeks to prove the defendant's discriminatory animus on January 22, 2009, by pointing to an alleged prior adverse interaction with the defendant in 2007, and to the defendant's interaction with Mr. Bachman. The Third Circuit provided examples of what evidence would be sufficient for a plaintiff to produce from which a factfinder could reasonably conclude that an illegitimate factor more likely than not was a motivating or determinative cause of the alleged discrimination. Fuentes, 32 F.3d at 765. Those examples include showing that: the defendant in the past had subjected the plaintiff to unlawful discriminatory treatment; the defendant treated other, similarly situated persons not of the plaintiff's protected class more favorably; or the defendant has discriminated against other members of the plaintiff's protected class or other protected categories of persons. Id.

Mr. Patterson offers the following account of an incident in the past when Mr. Averbeke allegedly subjected him to unlawful discriminatory treatment. In 2007, the plaintiff allegedly called the defendant and asked the price of a Jeep advertised in a local periodical. Mr. Averbeke informed the plaintiff over the telephone that the price of the Jeep was $8,000. When Mr. Patterson arrived to purchase the Jeep, however, Mr. Averbeke told him that the price of the Jeep was $12,000. Mr. Patterson's various family members testified that they were aware of this incident when it happened, yet no one but the plaintiff heard Mr. Averbeke's side of the conversation when he said $8,000. Mr. Averbeke blames this miscommunication, if it happened, on his thick French accent, and testified that customers often have difficulty understanding him, especially over the telephone. Without a credibility determination, the Jeep incident cannot serve to show Mr. Averbeke's discriminatory animus.

Nevertheless, Mr. Patterson argues that the Jeep incident coupled with Mr. Averbeke's better treatment of a Caucasian proves that when Mr. Averbeke refused to sell the car to the plaintiff, it was the result of discriminatory animus. The Third Circuit has cautioned that an inference of discrimination based on a single comparator may be acceptable at the *prima facie* stage of the McDonnell Douglas analysis, but not necessarily at the pretext stage where the factual inquiry into the alleged discriminatory motives of the defendant has risen to a new level of specificity. Simpson v. Kay Jewelers, Div. of Sterling, Inc., 142 F.3d 639, 646 (3d Cir. 1998). "This is not to say that more favorable treatment of a single member of a non-protected group is never relevant, but rather that the evidence cannot be viewed in a vacuum." Id.

15

Mr. Patterson argues that only evidence pertaining to January 22, 2009 would be relevant and thus admissible. In his amended complaint, however, Mr. Patterson alleges that Mr. Averbeke "intentionally engaged in a pattern and practice of discriminating against the plaintiff because he is an African American man." See Am.Compl. ¶ 70. While I am mindful that freedom from discrimination is an individual rather than a group entitlement, it would seem unfair to the defendant to preclude him from offering evidence to show that he has not engaged in such a pattern and practice, especially where the plaintiff accused him of such conduct. The defendant testified that he sells to whomever can pay. This evidence tends to support his defense to animus and pretext, showing that skin color and race do not matter to him, and to highlight his only concern, i.e., that payment can be made. Accordingly, I will deny the plaintiff's motion to strike Appendix E. At trial, however, should the plaintiff limit his case to a presentation of what occurred on January 22, 2009, and forego a discussion of pattern and practice, I will entertain a request to re-visit this issue.

    An appropriate Order follows.